**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
Steven A. Schwartz *(pro hac vice forthcoming)*
*steve@chimicles.com*
Beena M. McDonald (CA Bar ID 365776)
*bmm@chimicles.com*
361 West Lancaster Avenue
Haverford, PA 19041
P: (610) 642-8500
F: (610) 649-3633

**Pro Hac Vice* application to be submitted

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARMEN TEJADA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT DIABETES CARE INC. and ABBOTT LABORATORIES,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1. Abbott manufactured, marketed, distributed, and sold the Libre 3 Sensors to diabetes patients across the country. Abbott advertised and marketed these Sensors as effective for monitoring glucose levels while failing to disclose material manufacturing defects that adversely impacted the accuracy and reliability of the Libre 3 Sensors' glucose readings.

2. Because Abbott concealed material safety information from consumers, and made affirmative misrepresentations, consumers paid a substantial premium when buying the defective Libre 3 Sensors in reliance on the numerous express and implied promises, representations, assurances and/or affirmations from Defendants.

3. In December 2025, Abbott was forced to issue a recall for approximately 3 million of the Libre 3 Sensors, admitting that due to a faulty production line, the sensors would produce inaccurate

glucose readings that would "pose serious health risks, including potential injury or death, or other less serious complications" to patients using the sensors.

4. As of January 7, 2026, there were at least 860 reported serious injuries and at least 7 reported deaths due to the sensors' inaccurate readings.

5. On February 4, 2026, the FDA provided an update classifying the recall as a Class I Recall, which is the most serious type of recall issued by the FDA, indicating a reasonable probability that using or being exposed to a product will cause serious adverse health consequences or death.

6. Abbott's misconduct caused substantial harm and injuries to Plaintiff and Class members in California and throughout the country. Plaintiff brings this action individually and on behalf of the Class and seeks actual damages, restitution and other remedies.

## THE PARTIES

7. Plaintiff is a citizen and resident of California. Plaintiff has purchased the FreeStyle Libre 3 and the FreeStyle Libre Plus 3 Sensors on several occasions for the purpose of monitoring her blood glucose levels and managing her diabetes.

8. Defendant Abbott Diabetes Care Inc. is a Delaware corporation with its principal place of business in Alameda, California, within this District, and Plaintiffs' claims arise from its conduct originating in this District, including marketing, sales, post market activities, and recalls for the Libre 3 Sensors.

9. Defendant Abbott Laboratories is an Illinois corporation with its principal place of business in Abbott Park, Illinois.

## JURISDICTION AND VENUE

10. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

11. This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff and members of the Class are citizens of states that differ from Abbott.

12. This Court has personal jurisdiction over Abbott because Abbott conducts business in and has sufficient minimum contacts with the Northern District of California.

13. Venue is likewise proper as to Abbott in this District under 28 U.S.C. § 1391(a)(1) because Abbott Diabetes Care Inc.'s principal place of business is in this District and many of Abbott's acts complained of herein occurred within this District.

## FACTUAL ALLEGATIONS

**FreeStyle Libre 3 and FreeStyle Libre 3 Plus Sensors**

14. Diabetes is a chronic disease affecting almost 40 million Americans, characterized by the body's inability to properly producer respond to insulin, which results in dangerous fluctuations in blood glucose levels. Almost 100 million Americans have prediabetes.

15. In order to effectively manage and/or control diabetes, both Type I and Type II diabetes patients must closely monitor and manage their blood glucose levels through exercise, diet, and medications, and many must also supply the bodies with appropriate amounts of insulin based on daily routines.

16. Continuous glucose monitoring systems are used to provide real-time monitoring of a person's blood glucose levels.

17. Individuals with diabetes, including Plaintiff and the Class Members, rely on accurate real-time glucose readings to make critical treatment decisions such as insulin dosing calculations, carbohydrate intake determinations, meal and medication choices and timings, and activity choices.

18. Inaccurate glucose readings can result in severe adverse health consequences including hypoglycemia-induced seizures, loss of consciousness, permanent brain damage, and death, or hyperglycemia-induced diabetic ketoacidosis, organ damage and death.

19. Abbott designed, manufactured, marketed, distributed and sold the Libre 3 Sensors as continuous glucose monitoring systems.

20. The Libre 3 Sensors are intended to replace blood glucose testing for diabetes treatment decisions. The Libre 3 Sensors also detect trends to aid in the detection of episodes of hyperglycemia and hypoglycemia, facilitating both acute and long-term therapy adjustments.

21. The Libre 3 Sensors are FDA approved for individuals aged four and older.

22. Plaintiff and Class Members, who are Type 1 or Type 2 diabetics or are guardians of diabetics, paid out of pocket for the Libre 3 Sensors to help manage diabetes.

23. Abbott marketed the Libre 3 Sensors as having unsurpassed accuracy with the world's smallest and most accurate 14-day glucose sensor, implicitly warranting consistent and reliable performance.

24. Abbott publicly touted that the Libre 3 Sensors achieved an overall mean absolute relative difference (MARD) of 7.9% making it the first and only 14-day continuous glucose monitoring (CGM) system to achieve a sub-8% overall MARD.

25. Abbott prominently advertised that the Libre 3 Sensors provide the best accuracy and even touted that the Sensors' efficacy eliminated the need for fingersticks and empowered people with diabetes to be more confident when making important diabetes management decisions.

26. In its limited warranty, Abbott expressly warranted that the Libre 3 Sensors were free from defects in material and workmanship under normal use for a period of one year from the date of manufacture or the original date of purchase, whichever is later.

27. Abbott made these representations even though in July 2024 it had to recall certain defective Libre 3 Sensors due to problems in the same production line that is involved in the November 2025 recall.

28. In contrast to Abbott's assurances, the FDA has determined that the Libre 3 Sensors are defective due to a manufacturing flaw in a production line that affected over 3 million sensors. The defect causes the Sensors to report falsely low glucose readings, even when users' actual blood glucose levels are normal or even elevated. According to the FDA, these inaccurate readings pose a serious safety risk because they may prompt users to take unnecessary corrective actions or delay appropriate treatment, thereby increasing the risk of severe hypoglycemia, loss of consciousness, seizures, or death.

29. Abbott failed to publicly disclose the defect or initiate a broad corrective action until November 24, 2025, long after the defect has manifested in the market, including after 736 serious injuries and seven deaths had been reported to, and were known by, Abbott.

30. On December 2, 2025, the FDA issued an Early Alert to warn consumers about the defective Libre 3 Sensors. The FDA has classified the issue as a serious medical device safety concern after

Abbott reported at least 860 reports of serious adverse health events, including seven deaths, associated with the defective Libre 3 Sensors.

31. The FDA has advised that affected Sensors should be discontinued and replaced.

32. Abbott's delayed disclosure deprived consumers of important safety information necessary for their evaluation of whether to continue purchasing and using the Sensors.

33. On February 4, 2026, the FDA provided an update classifying the recall as a Class I Recall, which is the most serious type of recall issued by the FDA, indicating a reasonable probability that using or being exposed to a product will cause serious adverse health consequences or death.

**Abbott Knew About, But Concealed, the Defect in the Libre 3 Sensors**

34. Abbott knew about the manufacturing defect through its own internal testing and market surveillance. Abbott identified that Libre 3 Sensors manufactured on a specific production line were systematically producing defective Libre 3 Sensors that provided inaccurate glucose readings.

35. In July 2024, Abbott recalled Libre 3 Sensors for providing incorrect high readings. In September 2024, the FDA classified the recall as a Class I recall, the Agency's most serious designation, which is reserved for products that present a reasonable probability of causing serious adverse health consequences or death, including severe hypoglycemia, seizures, coma, permanent neurological injury and death.

36. The November 2025 recall for incorrect low readings involves the same production line as the production line that resulted in the July 2024 recall.

37. The shifting defects —going from dangerously-high to dangerously-low inaccuracies within 18 months—demonstrates a systemic failure in Abbott's quality controls and a severe lack of effective Corrective and Preventative Actions required by the FDA. *See* 21 CFR § 820.100.

38. Approximately 3 million Libre 3 Sensors manufactured on the offending production line were distributed in the United States and remain potentially in circulation.

39. Abbott has disclosed that about half of those Libre 3 Sensors, around 1.5 million, had expired or been used by patients by the time the defect was disclosed in November.

**Plaintiff's Experience**

40. Plaintiff purchased Abbott's Libre 3 Sensors to manage her diabetes. She paid out-of-pocket for certain of the sensors.

41. Plaintiff relied on the readings from his Sensors to make decisions about her blood sugar management.

42. Prior to purchasing the Libre 3 Sensors, Plaintiff reviewed and relied on marketing and advertising materials that represented the Sensor to be accurate and reliable and to enable her to make important medical decisions.

43. These marketing and advertising materials represented that the Libre 3 Sensors would provide reliable real-time glucose readings, thereby eliminating the need for fingersticks. None of these advertisements or other materials included statements that the Libre 3 Sensors were defective, inaccurate, and at risk for critical alert failures, or that there had been problems with the production line for the Libre 3 Sensors in July 2024.

44. Plaintiff relied on these statements and omissions before purchasing the Libre 3 Sensors. At the time Plaintiff purchased her sensors, she paid prices based on the value of a device free of such material defects. As such, Plaintiff suffered economic injury because she paid more for the Libre 3 Sensors than she should have paid.

45. Plaintiff received a letter from Abbott informing her that several Libre 3 Sensors she had purchased were among those identified as defective and therefore subject to recall. After receiving a false low glucose reading, she also confirmed on Abbott's recall verification website that the serial numbers for her sensors were part of the recall.

46. Through her use of defective Libre 3 Sensors, Plaintiff experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements.

**Fraudulent Omission Allegations**

47. Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Abbott responsible for failing to rectify the defects mentioned above and disseminating false and misleading marketing materials regarding the Sensors. Plaintiff's claims arise out of Abbott's fraudulent concealment of these defects, and its representations about the efficacy, accuracy, and quality of those monitors.

48. Plaintiff alleges that Abbott knew, or was reckless in not knowing, about the defects at all relevant times, specifically at the time Plaintiff and the other members of the proposed Classes acquired their Libre 3 Sensors or related accessories—such as overpatches, adhesives, additional test strips, insulin pumps, and/or Freestyle-compliant cell phones—required for the Sensors themselves or necessary because of the Sensors' defects. Abbott had a duty to disclose these defects based on its exclusive knowledge of them and its concealment of them.

49. Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Abbott:

a. Abbott actively concealed the defects from consumers, as alleged above. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of specific individuals at Abbott responsible for such decisions.

b. Abbott knew, or was reckless or negligent in not knowing, that the Libre 3 Sensors contained the defects. Abbott concealed these defects and made representations about the efficacy, quality, accuracy, and reliability of these monitors.

c. Abbott concealed material information regarding the defects at all times, and it made representations about the efficacy, quality, and accuracy of the Libre 3 Sensors starting at a time currently unknown to Plaintiff and continuing through the time of sale, on an ongoing basis, to this day, as alleged above. Abbott has still not disclosed the truth about the full scope of these defects to anyone outside of the company. It has taken insufficient actions to inform consumers about the true nature of these defects in the Libre 3 Sensors.

d. Abbott concealed material information regarding the true nature of the defects in every communication it had with Plaintiff and the other Class members about the Sensor, and, particularly, its efficacy, quality, and accuracy. Plaintiff is not aware of any documents, communications, or other items in which Abbott has disclosed the truth about the full scope of the defects in the Sensors to anyone outside of Abbott. Such information is not adequately disclosed in any sales

documents, displays, advertisements, warranties, manuals, or on Abbott's website.

e. Abbott concealed the defects from Plaintiff and the other Class members by making inaccurate representations about the efficacy, quality, and accuracy of the Sensors. Abbott actively concealed the truth about the existence, scope, and nature of the defects from Plaintiff and the other Class members at all times, even though it knew about the defects and knew that information about the defects would be important to a reasonable consumer. Abbott promised in its marketing materials that the Sensors had qualities that they do not have.

f. Abbott actively concealed material information about these defects in the Sensor for the purpose of inducing Plaintiff and the other Class members to acquire the Libre 3 Sensors or related accessories, rather than using competitors' glucose monitors. Had Abbott disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and the other Class members (and any reasonable consumer) would have been aware of them, and they would not have acquired the Libre 3 Sensors or additional accessories for them, or they would have paid less for them.

50. Defendants had a duty to disclose material facts because: (1) they possessed exclusive knowledge of the defects not known to consumers; (2) they actively concealed the defects while making partial representations (e.g., "no fingersticks," accuracy, reliability, and safety claims) that were misleading absent disclosure; and (3) the defects go to safety—a central characteristic of a medical device—creating a duty to disclose.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

51. Any applicable statutes of limitation have been tolled by the discovery rule and Abbott's knowing and active concealment of the defect.

52. Through no fault or lack of diligence, Plaintiff and Class Members were deceived regarding the defect and could not reasonably discover the defect or Defendants' deception with respect to the defect.

53. Further, by failing to provide immediate notice of the defect and related safety risks associated with normal use, by continuing to sell the defective Sensors, and by continuing to advertise the defective Sensors as accurate and effective, Abbott actively concealed the defect from Plaintiff and the Class.

54. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' active concealment.

## CLASS ACTION ALLEGATIONS

55. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

56. Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the Class, defined as follows:

**A.** **Nationwide Class**: All persons residing in the United States who purchased the FreeStyle Libre 3 or the FreeStyle Libre 3 Plus Sensors.

**B.** **California Subclass**: All persons residing in California who purchased the FreeStyle Libre 3 or the FreeStyle Libre 3 Plus Sensors.

57. The proposed Nationwide Class and Subclass (collectively referred to herein as the "Class" unless otherwise specified) meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

58. Plaintiff reserves the right to amend the above definitions or to add subclasses in 10 subsequent pleadings and motions for class certification.

59. **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. As stated above, roughly 3 million FreeStyle Libre 3 and FreeStyle Libre 3 Plus units from the affected production line have been sold in the United States.

60. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Abbott's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class were exposed to the same misrepresentations and

omissions regarding the Sensors and all Class Members suffered similar harm as a result of Abbott's uniform conduct.

61. **Adequacy:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class that he seeks to represent; Plaintiff has retained counsel competent and highly experienced in class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

62. **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. Even if Class members could afford such individual litigation, the number of claims would create an unnecessary strain on judicial resources. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties, and to the court system, due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

63. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Abbott engaged in the wrongful conduct alleged herein;

b. Whether Abbott designed, advertised, marketed, distributed, or sold the Libre 3 Sensors into the stream of commerce in the United States;

c. Whether Abbott's alleged conduct violates applicable law;

d. Whether Abbott misled Class Members regarding the quality, benefits, and/or risks of the Libre 3 Sensors**;**

e. Whether Abbott had actual or imputed knowledge of the alleged defects and failed to disclose such defects and/or their risks to Plaintiff;

f. Whether Plaintiff and Class Members were damaged by Defendants' conduct;

g. Whether Abbott was unjustly enriched; and

h. Whether Plaintiff and the Class overpaid for their Sensors as a result of the defects alleged herein.

**<u>COUNT ONE</u>**

**FRAUDULENT OMISSION OR CONCEALMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

64. Plaintiff incorporates by reference the allegations in paragraphs 1–62 as though fully set forth herein.

65. Plaintiff asserts this claim for common law fraud under an omission or concealment theory.

66. Abbott was aware of the Libre 3 Sensors' defects mentioned above when it manufactured, marketed, and sold the devices to Plaintiff and the other Class members.

67. Being aware of the Sensor's defects and knowing that Plaintiff and the other Class members could not have reasonably been expected to know about them, Abbott had a duty to disclose the defects to Plaintiff and the other Class members in connection with the sale of the Sensors, as these defects relate to important safety issues with devices that are used for managing diabetes, a disease that can be life-threatening.

68. Defendants had a duty to disclose material facts because: (1) they possessed exclusive knowledge of the defects not known to consumers; (2) they actively concealed the defects while making partial representations (*e.g.*, "no fingersticks," accuracy, reliability, and safety) that were misleading absent disclosure; and (3) the defects go to safety—a central characteristic of a medical device—creating a duty to disclose.

69. Abbott did not disclose the defects to Plaintiff and the other Class members in connection with the sale of the Libre 3 Sensors and/or subsequent sales of Sensor.

70. Abbott knew that these omissions would cause the false impression that the Libre 3 Sensors did not have the aforementioned defects.

71. The defects were material to the sale of the Libre 3 Sensors and sale of related products. Abbott failed to disclose defects that can result in malfunctions, including but not limited to inaccuracies in glucose readings.

72. The existence of these defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the Libre 3 Sensors and/or additional items for the Libre 3 Sensors. In purchasing the Libre 3 Sensors and related products, Plaintiff and the other Class members, who planned to use the Libre 3 Sensors for diabetes management, reasonably and justifiably relied on Abbott to disclose known material defects with respect to the Libre 3 Sensors. Only Abbott had the relevant information about these defects, and Plaintiff and the other Class members would not have known of these defects otherwise.

73. Had Plaintiff and the other Class members known of the defects, they would not have purchased the Libre 3 Sensors, would have paid less for the devices, or would not have purchased additional items required for the Libre 3 Sensors or necessary because of the Libre 3 Sensor's defects.

74. Through their omissions regarding the defects, Abbott intended to induce, and did induce, Plaintiff and the other Class members to purchase Libre 3 Sensors they otherwise would not have purchased, or to pay more for Libre 3 Sensors and related products than they otherwise would have paid.

75. As a direct and proximate result of Abbott's omissions, Plaintiff and the other Class members either overpaid for the Libre 3 Sensors or would not have purchased the Libre 3 Sensors and/or additional required items if the defects had been disclosed.

76. Plaintiff and the other Class members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT TWO

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

77. Plaintiff incorporates by reference the allegations in paragraphs 1–62 as though fully set forth herein.

78. Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

79. Through and as a result of Plaintiff and Class members' use of Abbott's products, Abbott received monetary benefits.

80. Abbott has benefited from selling at an unjust profit defective Libre 3 Sensors that had artificially inflated prices due to Abbott's concealment of defects, and Plaintiff and the other Class members have overpaid for these devices.

81. Abbott, upon information and belief, has therefore engaged in opportunistic, unethical, and immoral conduct by profiting from Sensors that it knew were defective or highly subject to defect.

82. As such, it would be inequitable, unconscionable, and unlawful to permit Abbott to retain the benefits it derived as a consequence of its wrongful conduct.

83. Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

**COUNT THREE**

**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA") – Cal. Civ. Code § 1750, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

84. Plaintiff incorporates by reference the allegations in paragraphs 1–62 as though fully set forth herein.

85. This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, et seq. Plaintiff and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Abbott's sale of the Libre 3 Sensors to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The Libre 3 Sensors purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

86. Defendants violated the CLRA by engaging in the following practices proscribed 19 by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the Class that were intended to result in, and did result in, the sale of its merchandise: (1) advertising goods or services with intent not to sell them as

advertised; and (2) making false or misleading statements of fact concerning the safety and efficacy of the Sensors.

87. Plaintiff and the Class have suffered damage as a result of the use or employment by Defendants of a practice declared to be unlawful by § 1770(a) and seek to recover the following: (1) restitution of the money paid for the Libre 3 Sensors, which Plaintiff and the Class would not have bought or would have paid less for had they known of the defects; (2) an order enjoining Abbott's deceptive practices; and (3) any other relief that the court deems proper.

**COUNT FOUR**

**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Unfair and Fraudulent Prongs)**
**(On Behalf of the California Class)**

88. Plaintiff incorporates by reference the allegations in paragraphs 1–62 as though fully set forth herein.

89. Plaintiff brings this cause of action individually and on behalf of the members of the California Subclass.

90. California Business & Professions Code § 17200 ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

91. The acts and practices of Abbott as alleged herein constitute "unfair" business acts and practices under the UCL in that Abbott' conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous. Further, the gravity of Abbott' conduct outweighs any conceivable benefit of such conduct.

92. Abbott has, in the course of its business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices under the UCL by concealing the true risks of the Libre 3 Sensors.

93. These acts also constitute "fraudulent" business acts and practices under the UCL in that Abbott's conduct is false, misleading, and has a tendency to deceive California Subclass members and the general public.

94. Plaintiff and California Subclass members have suffered injury in fact and have lost money as a result of Abbott's fraudulent business acts or practices.

95. The above-described unfair business acts or practices present a threat and likelihood of harm and deception to Plaintiff and California Subclass members in that Abbott has systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

96. Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiff and California Subclass members seek an order providing restitution and disgorgement of all profits relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

97. Because of Plaintiff's reliance on Abbott' omissions concerning the Libre 3 Sensors, Plaintiff and California Subclass members suffered an ascertainable loss of money, property, and/or value and were harmed and suffered actual damages.

98. Plaintiff and California Subclass members are reasonable consumers who did not expect the risks inherent with the Libre 3 Sensors.

99. Abbott's conduct in concealing and failing to disclose the true risks of the Recalled Devices is unfair in violation of the UCL, because it is immoral, unethical, unscrupulous, oppressive, and substantially injurious.

100. Abbott acted in an immoral, unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner.

101. The gravity of harm resulting from Abbott' unfair conduct outweighs any potential utility. The practice of selling Libre 3 Sensors that present a substantial health risk to consumers harms the public at large and is part of a common and uniform course of wrongful conduct.

102. The harm from Abbott's conduct was not reasonably avoidable by consumers because only Abbott was aware of the true facts concerning the risks of its Libre 3 Sensors, and Abbott did not disclose them, despite knowing of such defects. Plaintiff and California Subclass members did not know of and had no reasonable means of discovering the true risk of using the Libre 3 Sensors.

103. Plaintiff and California Subclass members suffered injury in fact, including lost money or property, as a result of Abbott' unfair acts. Absent Abbott' unfair conduct, Plaintiff would not have bought the Recalled Devices.

104. Through their unfair conduct, Abbott acquired money that Plaintiff and California Subclass members.

105. Plaintiff and California Subclass members accordingly seek appropriate relief under the UCL, including (a) restitution in full and (b) such orders or judgments as may be necessary to enjoin Abbott from continuing their unfair practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment against Abbott as follows:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c. An order requiring Abbott to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

d. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

e. An award of such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: February 4, 2026

By: /s/ *Beena M. McDonald*
Steven A. Schwartz *(pro hac vice forthcoming)*

*steve@chimicles.com*
Beena M. McDonald (CA Bar ID 365776)
*bmm@chimicles.com*
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
P: (610) 642-8500
F: (610) 649-3633

*Attorneys for Plaintiff and the proposed class*